UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DANA M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-CV-757-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Dana M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED.**

## <u>BACKGROUND</u>

On October 7, 2014, Plaintiff protectively filed a claim for SSI alleging disability beginning September 8, 1994 (the disability onset date). Transcript ("Tr") 12, 164-69. Plaintiff alleged disability due to: "(1) anxiety; (2) pain in body; (3) right shoulder; and (4) back." Tr. 183. Plaintiff's claim was denied initially on October 9, 2015, after which he requested an administrative hearing. Tr. 12. On May 16, 2018, Administrative Law Judge Roxanne Fuller (the

"ALJ") conducted a video hearing from Falls Church, Virginia. Tr. 12, 31-61. Plaintiff appeared and testified from Buffalo, New York, and was represented by Kelly Laga-Sciandra, an attorney. *Id*. Donna J. Bardsley, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. At the hearing, Plaintiff and his attorney amended the alleged onset date to August 27, 2015. Tr. 35.

The ALJ issued an unfavorable decision on August 8, 2018, finding that Plaintiff was not disabled. Tr. 12-26. On April 11, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 8, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in her August 8, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since October 7, 2014, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: anxiety; post-traumatic stress disorder (PTSD); and depression (20 CFR 416.920(c));

3. The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: is able to perform routine and repetitive tasks; is limited to a low stress job, defined as having only occasional decision-making required, and only occasional changes in the work setting; no interaction with the public, and only occasional interaction with co-workers and supervisors;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on November 12, 1973 and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 7, 2014, the date the application was filed (20 CFR 416.920(g)).

Tr. 12-26.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on October 7, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 26.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ failed to make a severity determination regarding Plaintiff's spinal and right shoulder impairments at step two of the sequential evaluation and then failed to account for these impairments in the RFC. *See* ECF No. 11-1 at 1, 13-15. Second, Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence of record and based the RFC on her own lay interpretation of bare medical findings and mischaracterizations of the record. *Id*. at 1, 15-27. The Commissioner responds that Plaintiff failed to demonstrate any limitations due to back and right shoulder conditions, the ALJ properly considered the medical opinions, and the ALJ's decision was supported by substantial evidence. *See* ECF No. 14-1 at 12-19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that although Plaintiff complained of back and right shoulder conditions, he failed to show that either of these conditions limited his ability to perform basic work activities. Plaintiff's treating sources consistently observed that his physical examination findings were unremarkable, and the objective medical evidence does not

show any limitations due to back and right shoulder conditions. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC determination.

On August 27, 2015, Plaintiff was examined by consultative physician John Schwab, D.O. ("Dr. Schwab"). Tr 269-72. Plaintiff complained of lower back and right shoulder pain since 1994. Tr. 269. Upon examination, Dr. Schwab observed that Plaintiff's gait and stance were normal. Tr. 270. Plaintiff heel-and-toe walked with no difficulty, and he exhibited no difficulty changing for the examination; getting on and off the examination table; or rising from a seated position. *Id.* Plaintiff's lumbar spine and cervical spine each exhibited full range of motion, except for a limited lumbar rotation on the right. Tr. 271. Straight leg raising tests were negative bilaterally. Tr. 271. An x-ray of Plaintiff's lumbar spine was unremarkable; and an x-ray of his right shoulder revealed posttraumatic changes in the AC joint/clavicle. Tr. 271, 273, 274. Plaintiff demonstrated full 5/5 muscle strength and full ranges of motion, as well as normal reflexes and sensations throughout his arms and legs, except for slightly reduced strength (4.5/5) and range of motion in the right arm. Tr. 271. Plaintiff's hand and finger dexterity was intact, and he demonstrated full grip strength bilaterally. *Id.* Dr. Schwab assessed a moderate restriction in his ability to raise his right arm above shoulder height and lifting weight and diagnosed low back pain and right shoulder pain. *Id.*

On August 27, 2015, Plaintiff was evaluated by consultative psychologist Janine Ippolito, Psy.D. ("Dr. Ippolito"). Tr. 263-67. Plaintiff complained of anxiety and depression, as well as panic attacks, sleep difficulties, and short-term memory deficits. Tr. 264. Upon mental status examination, Dr. Ippolito observed that Plaintiff's manner of relating, social skills, and overall presentation were adequate to poor (Tr. 264), and his expressive and receptive language skills were adequate (Tr. 265). His thought processes were coherent and goal directed with no hallucinations, delusions, nor paranoia. Plaintiff's mood was dysthymic; his affect was anxious and dysphoric;

and his attention and concentration were impaired due to suspected limited intellectual functioning. Tr. 265. Plaintiff refused to provide any responses to memory tasks. *Id*. His cognitive functioning was within the below-average range, and his general fund of information was somewhat limited. *Id*. Dr. Ippolito assessed Plaintiff's insight as fair to poor, and his judgment as poor. *Id*.

Dr. Ippolito diagnosed PTSD, agoraphobia with panic attacks, and an unspecified depressive disorder. Tr. 266. She assessed no limitations in Plaintiff's ability to follow and understand simple directions and instructions, independently perform simple and complex tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, and make appropriate decisions. *Id*. She further assessed marked limitations in Plaintiff's ability to relate adequately with others and appropriately deal with stress. *Id*. She opined that Plaintiff's limitations were due to emotional distress and possible cognitive deficits. *Id*. She also opined that Plaintiff's psychiatric problems might significantly interfere with his ability to function on a daily basis. *Id*.

On September 3, 2015, state agency psychological consultant T. Bruni ("Dr. Bruni") reviewed the evidence of record and completed a Psychiatric Review Technique ("PRT") form and a mental RFC assessment. Tr. 74-78. On the PRT form, Dr. Bruni assessed mild restrictions in Plaintiff's ability to perform the activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Tr. 74.

On the mental RFC assessment, Dr. Bruni assessed no significant limitations in understanding, remembering, and carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; and, accepting instructions and responding appropriately to criticism from supervisors. Tr. 76, 77. Dr. Bruni also assessed moderate limitations in maintaining

attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior; and, responding appropriately to changes in the work setting. *Id*. Dr. Bruni opined that Plaintiff could understand and remember simple instructions and procedures, maintain adequate attention and concentration to complete work-like procedures, and he could sustain a routine, relate and respond in an appropriate manner, adapt to minor changes in a routine work setting, and use appropriate judgment to make simple work-related decisions. Tr. 78.

On November 4, 2016, Plaintiff presented to Janelle Colquhoun, N.P. ("Ms. Colquhoun"), at Community Health Services of Buffalo ("CHSB"), complaining of back and leg pain, as well as anxiety. Tr. 517-20, 539-40. Upon physical examination, Plaintiff's gait was steady, and he had full range of motion in his back with no tenderness. Tr. 518. Straight leg raising testing was positive with active range of motion of the hip and knee with associated pain. *Id*. Plaintiff demonstrated full muscle strength throughout his arms and legs and full range of motion throughout his joints. *Id*. Ms. Colquhoun assessed lumbago, hip pain, and muscle strain, as well as generalized anxiety disorder and panic disorder. *Id*. She referred Plaintiff for lumbar spine and hip x-rays. Tr. 518-19. On December 16, 2016, x-rays of Plaintiff's lumbar spine revealed mild diffuse spondylosis and limited flexion; and, x-rays of his hips were unremarkable. Tr. 539-40. On January 19, 2017, x-rays of Plaintiff's neck were negative. Tr. 397.

On November 7, 2016, Plaintiff presented to the Emergency Department ("ED") at Medina Memorial Hospital ("Medina"), complaining of increased anxiety. Tr. 372-80. Plaintiff said he felt something was wrong with him; he felt dehydrated; and he complained of muscle spasms and some chest discomfort. Tr. 372. His workup was "negative," and he was discharged home in stable condition. Tr. 374.

On January 19, 2017, Plaintiff presented again to the ED at Medina complaining of a sensation that his throat was closing off. Tr. 394-98. He was assessed with GERD (gastroesophageal reflux disorder) and told to continue taking his prescribed medications until his follow-up appointment with gastroenterology. On January 25, 2017, Plaintiff treated at Eastern Niagara Medical Group for follow up after his ED visit; he was assessed with dysphagia and prescribed Prilosec 10 mg twice per day. Tr. 662-63.

On August 4, 2017,[1] Plaintiff returned to CHSB with complaints of acid reflux. Tr. 527-29. Upon examination, Plaintiff's gait was normal, and he demonstrated normal muscle strength, tone, and bulk throughout his arms and legs, and his larger joints exhibited full ranges of motion. Tr. 528. Ms. Colquhoun assessed hip pain and GERD, as well as anxiety and depression. *Id*.

On December 26, 2017, Plaintiff presented to Horizons Health Services ("Horizons"), for psychiatric assessment and treatment. Tr. 283-313. He complained of anxiety and reported daily panic attacks for the past year. Tr. 283. He said his only coping skill was that he "reads every day." Tr. 300. On mental status examination, Cassie Guagliano, CASAC,[2] LCSW ("Ms. Guagliano"), observed that Plaintiff's mood was anxious, and his affect was congruent to his mood. Tr. 292. Plaintiff's speech was normal; and he was fully oriented with appropriate thought content and

---

[1] As the ALJ noted, there was a gap in the records from January 2017 to August 2017. *See* Tr. 20.
[2] Credentialed Alcoholism and Substance Abuse Counselor ("CASAC") is a certification for substance abuse counselors issued by the New York State Office of Addiction Services and Supports ("OASAS"). *See* https://oasas.ny.gov.

logical thought process. Tr. 292-93. His cognitive status was oriented and denied visual and/or auditory hallucinations. Tr. 293. Plaintiff's insight and judgment were impaired, and his activity level was normal. *Id.*

On February 14, 2018, Robyn Dinderski, LMSW ("Ms. Dinderski), at Horizons, noted that Plaintiff's diagnoses consisted of PTSD and panic disorder. Tr. 324. On February 27, 2018, Plaintiff complained of having panic attacks about once a week. Tr. 317. Upon mental status examination, Adrienne Roy, N.P. ("Ms. Roy"), observed that Plaintiff's mood was anxious, and his affect was congruent to his mood. Tr. 315. He had normal speech, and he was fully oriented; however, she assessed his thought content as delusional, somatic, irrelevant, preoccupied, grandiose, and disorganized, with ideas of reference, and his thought process as tangential, circumstantial, repetitive, and loose. Tr. 315-16. He denied auditory and/or visual hallucinations. Tr. 316. Ms. Roy diagnosed PTSD, panic disorder, and agoraphobia. Tr. 314.

Plaintiff first argues that the ALJ erred when she did not assess any limitations due to Plaintiff's back and right shoulder conditions. *See* ECF No. 11-1 at 13-15. Plaintiff's argument is unavailing. First, the burden of proof is on the claimant at the first four steps of the sequential process. *Perez v. Chater*, 77 F.3d at 46 (2d Cir. 1996). Since Plaintiff bears the burden of proof, the ALJ could reasonably rely on the lack of evidence that would preclude work at all exertional levels. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (Commissioner need not provide evidence of the claimant's RFC); *see also Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("[Commissioner] is entitled to rely not only on what the record says but also on what it does not say."). Moreover, "where the medical evidence shows relatively little physical impairment, an ALJ

permissibly can infer a common-sense judgment about functional capacity even without a physician's assessment." *Walker v. Astrue*, No. 08-cv-0828, 2010 WL 2629832, at *7 (W.D.N.Y June 11, 2010) (quoting *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 17 (1st Cir. 1996)).

Although Plaintiff complained of back and right shoulder conditions, he failed to show that either of these conditions limited his ability to perform basic work activities. As noted above, Plaintiff's treating sources consistently observed that his physical examination findings were unremarkable, and the objective medical evidence does not show any limitations due to back and right shoulder conditions. As noted above, in November 2016, Ms. Colquhoun observed that Plaintiff's gait was steady; his back exhibited a full range of motion with no tenderness; and he demonstrated full muscle strength throughout his arms and legs full range of motion throughout his joints. Tr. 518. In January 2017, Plaintiff's treating sources repeatedly observed that his physical examination findings were unremarkable. Tr. 388, 542, 545-46. In August 2017, Ms. Colquhoun observed that Plaintiff's gait was normal. Tr. 528. Plaintiff demonstrated normal muscle strength, tone, and bulk throughout his arms and legs, and his larger joints exhibited full ranges of motion. Tr. 528. Similarly, from September 2017 through November 2017, Plaintiff's treating sources consistently observed that his physical examination findings were unremarkable. Tr. 420, 462, 550.

Likewise, the objective medical evidence does not show any limitations due to back and right shoulder conditions. X-rays of Plaintiff's lumbar spine, hips, and neck were unremarkable; and x-rays of his right shoulder revealed merely post-traumatic changes in the AC joint/clavicle. Tr. 273, 294, 397, 539-40. In addition, Plaintiff's own statements disprove any limitations due to back and right shoulder conditions. Specifically, Plaintiff repeatedly acknowledged that he worked out, did pushups and squats, and lifted weights. Tr. 372, 524, 527, 530. Thus, substantial evidence

shows that Plaintiff failed to demonstrate any limitations due to his back and right shoulder conditions.

Dr. Schwab's physical examination findings and assessment also support the ALJ's RFC determination. Tr. 269-71. Dr. Schwab noted that Plaintiff's gait and stance were normal; he heel-and-toe walked without difficulty; and he exhibited no difficulty changing for the examination, getting on and off the examination table, or rising from a seated position. Tr. 270. Plaintiff exhibited full range of motion in his lumbar spine and cervical spine, except for a limited lumbar rotation on the right. Tr. 271. Straight leg raise testing was negative bilaterally. *Id*. Plaintiff demonstrated full 5/5 muscle strength, full range of motion, and normal reflexes and sensations throughout his arms and legs, except for limited range of motion and 4.5/5 strength in his right arm. *Id*. Plaintiff's hand and finger dexterity were intact, and he demonstrated full grip strength bilaterally. *Id*. Based on these unremarkable examination findings, Dr. Schwab concluded that Plaintiff's only physical work-related limitations were a moderate restriction in raising his right arm above shoulder height and lifting weight. *Id*.

Here, the ALJ incorporated Dr. Schwab's findings and assessment, except for the limitations in raising his right arm and lifting weights. Tr. 17. A consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). However, there is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner. *See Pelam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (ALJ properly declined to credit certain conclusions in consultative physician's opinion that were inconsistent with other evidence of record); *see also Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (an ALJ is not bound to include in the RFC finding every specific limitation assessed by a consultative

physician and could, instead, exercise discretion in reviewing the record evidence in its totality). In this case, Dr. Schwab's limitations were inconsistent with Plaintiff's physical examination findings throughout the relevant period (Tr. 388, 420, 462, 518, 528, 542, 545-46, 550), the objective medical evidence (Tr. 273, 294, 397, 539-40), and Plaintiff's own statements (Tr. 372, 524, 527, 530). Based on the foregoing, the Court finds no error in the ALJ's assessment of Plaintiff's back and right shoulder conditions.

In his second point of error, Plaintiff contends that the ALJ improperly weighed the psychiatric opinion evidence of record. *See* ECF No. 11-1 at 15-27. However, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff retained the RFC to perform unskilled, low-stress work with no more than occasional interaction with co-workers and supervisors, and no interaction with the public. Tr. 17. The ALJ properly based his RFC determination on evidence from Drs. Ippolito and Bruni, as well as Plaintiff's treating sources. For instance, consistent with the ALJ's determination, consultative psychologist Dr. Ippolito, assessed no limitations in Plaintiff's ability to follow and understand simple directions and instructions, independently perform simple and complex tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, and make appropriate decisions.  Tr. 266. *See Petrie v. Astrue*, 412 F. App'x at 405 (a consultative psychologist's opinion may serve as substantial evidence in support of an ALJ's decision).

As for Dr. Ippolito's assessment of marked limitations in relating adequately with others and appropriately deal with stress, the ALJ properly determined that other substantial evidence of record demonstrated less than marked limitations in both areas. Tr. 17. *See Matta v. Astrue*, 508 F. App'x 53,56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make

an RFC finding that was consistent with the record as a whole). The ALJ, therefore, limited Plaintiff to a low-stress job with no more than occasional changes in the work setting, occasional interaction with co-workers and supervisors, and no interaction with the public. Tr. 17. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (it is within the sole province of the ALJ, as trier of fact, to weigh all evidence, including medical evidence, and resolve material conflicts in the evidence).

Notably, the basic mental demands of competitive work include the ability to understand, carry out, and remember simple instructions; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 416.921, 416.945(c); SSRs 85-15, 96-9p. In this regard, state agency psychological consultant Dr. Bruni opined that Plaintiff could understand and remember simple instructions and procedures, maintain adequate attention and concentration to complete work-like procedures and can sustain a routine, relate and respond in an appropriate manner, adapt to minor changes in a routine work setting, and use appropriate judgment to make simple work-related decisions. Tr. 78. State agency psychological consultants, such as Dr. Bruni, are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions. 20 C.F.R. § 416.912(b)(viii).

In addition to the findings of Drs. Ippolito and Bruni, treating ED providers at Medina observed that Plaintiff was fully oriented with normal affect, judgment, insight, recent and remote memory skills, as well as concentration. Tr. 420, 432, 463. Likewise, Ms. Guagliano, Plaintiff's therapist at Horizons, observed that although Plaintiff's mood and affect were anxious, his speech was normal, he was fully oriented, his thought content was appropriate, thought process was logical, his cognitive status was oriented, he denied visual and/or auditory hallucinations, and his activity level was normal. Tr. 293. Thus, substantial evidence demonstrated that Plaintiff's mental

14

limitations were less than marked, and his contention that the ALJ improperly considered the medical opinion evidence is unavailing.

Plaintiff further argues that the ALJ was obligated to further develop the evidence of record with respect to Plaintiff's anxiety. *See* ECF No. 11-1 at 19-21). This argument likewise lacks merit. Notably, at the May 2018 administrative hearing, Plaintiff's attorney advised that the record was complete and stated, "we're all set on this case." Tr. 34. On his disability reports, Plaintiff acknowledged that he has not seen a doctor or other health care professional and had not received any treatment at a hospital or clinic for any mental condition. Tr. 186, 231. Plaintiff also told Dr. Ippolito that he had no history of mental health treatment. Tr. 263. As noted above, the Commissioner may rely not only on what the record says, but also on what the record does not say. *See Dumas v. Schweiker*, 712 F.2d at 1553. Because Plaintiff has not shown that any other relevant mental health records exist, Plaintiff's argument fails, and the Court finds no error. *See Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record").

Plaintiff here points to no evidence in the record that the ALJ should have considered and failed to do so. Instead, Plaintiff merely asks the Court to reweigh the evidence. *See Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court]

can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the objective findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE